558 So.2d 409 (1990)
Mary Sharon SULLIVAN, Petitioner,
v.
SILVER PALM PROPERTIES, INC., Respondent.
No. 74190.
Supreme Court of Florida.
March 8, 1990.
*410 Joe N. Unger of the Law Offices of Joe N. Unger, P.A., Miami, and Robert E. Schack, P.A., Coral Gables, for petitioner.
Michael J. Murphy of Gaebe, Murphy, Mullen & Antonelli, Coral Gables, for respondent.
BARKETT, Judge.
We have for review Silver Palm Properties, Inc. v. Sullivan, 541 So.2d 624 (Fla. 3d DCA 1988), in which the district court certified the following question of great public importance:
Does a landowner have a duty to retard the subterranean root growth of its trees which are located adjacent to a public right of way?
Id. at 628.[1] We answer the question in the negative under the circumstances presented and approve the decision of the district court.
Sullivan was injured when she was a passenger in a car that ran off a rural, paved, two-lane public road and struck a tree. The collision occurred after the driver lost control due to a series of bumps in the road surface. The road had been built and maintained[2] by Dade County and the bumps in the road were caused by roots from Australian pine trees that extended from the adjacent property owned by Silver Palm Properties, Inc. The trees had been planted fifty to seventy years earlier and before Silver Palm acquired the property.
Dade County stipulated that it owned the road, that it had responsibility to maintain and repair the road, and that it had actual knowledge of the root conditions before the accident. Sullivan sued Silver Palm, the driver of the automobile, and Dade County, for negligence. The jury found that all three defendants were negligent and fixed a percentage of liability against each.
The issue here is limited to the judgment that held Silver Palm liable. The district court reversed that judgment, holding that Silver Palm was not liable because the landowner owed no duty to retard the subterranean root growth of its trees. Silver Palm Properties, Inc., 541 So.2d at 627. Sullivan argues that the law in Florida is otherwise, citing Price v. Parks, 127 Fla. 744, 173 So. 903 (1937); Gulf Refining Co. v. Gilmore, 112 Fla. 366, 152 So. 621 (1933); Armas v. Metropolitan Dade County, 429 So.2d 59 (Fla. 3d DCA 1983); and Morales v. Costa, 427 So.2d 297 (Fla. 3d DCA), review denied, 434 So.2d 886 (Fla. 1983).
We find Sullivan's reliance on these cases misplaced. Both Gulf and Price involved artificial conditions created by others directly on the public rights-of-way and not naturally growing vegetation on abutting land. In Gulf, a gas station owner had cordoned off the swale area between the curb and the sidewalk to discourage pedestrian traffic across the newly planted grass. The cord was on stakes, dark in color, and not readily observable at night. One night, the plaintiff tripped over the cord as she stepped across the grass, and the Court ruled that this artificial condition created by the station gave rise to liability.
In Price, the Court held that an injured plaintiff had a cause of action against a tortfeasor who caused a dangerous condition *411 by allowing materials from his vehicle to fall onto the roadway. In that case, a contractor spilled slippery materials and substances from his truck onto a public bridge, causing the ensuing accident.
Morales and Armas, on the other hand, do involve natural conditions rather than artificially created ones. In both cases, the landowner was held responsible for the maintenance of trees or vegetation that obstructed the motorist's view of a stop sign. Like the district court, we see considerable difference between the duty imposed in Morales and Armas and the duty sought to be imposed here. As the majority below noted:
[C]ommon sense required that a duty be imposed upon the landowner to remove landscaping which obstructed critical traffic signage. Vegetation that overhangs and blocks out a traffic control device constitutes an obvious condition and presents an imminent danger of uncontrolled traffic. The offending branch, moreover, need only be clipped away, a straightforward remedy... .
... [I]n the case now before us the offending vegetation was anything but obvious. The root growth was slow and subterranean; the defect in the right-of-way became noticeable only after a considerable passage of time... . All parties stipulated that Dade County, not Silver Palm, owned and maintained the roadway shoulder and surface in the area of the accident. Silver Palm had no right at any time to repair or alter the surface of the roadway. To hold a landowner liable for failing to clip back vegetation that has overgrown a traffic control device is reasonable. To impose upon a landowner a duty to undertake root trenching or tree topping purely in anticipation that subterranean growth may alter the surface of a public right-of-way at some indeterminate time in the future is both burdensome and unreasonable.
Silver Palm Properties, 541 So.2d at 626-27.
Although this precise question is new to Florida, other jurisdictions have considered this issue in the context of public sidewalks. Those decisions refused to hold landowners liable for injuries caused by roots growing under the surface of a public right-of-way. City of Birmingham v. Wood, 240 Ala. 138, 197 So. 885 (1940); Wall v. Village of Tallulah, 385 So.2d 905 (La. Ct. App.), writ refused, 393 So.2d 737 (La. 1980); Rose v. Slough, 92 N.J.L. 233, 104 A. 194 (1918); Bennett v. Gordon, 101 N.J. Super. 252, 244 A.2d 135 (App.Div.), cert. denied, 52 N.J. 499, 246 A.2d 456 (1968). We find the rationale in those cases directly applicable:
It was the responsibility of the municipality, and not that of [the abutting property owner], to maintain the sidewalk and correct the defect. Because of the remoteness of the relationship between the tree owner, the growth of the tree roots and the resulting defect in the sidewalk, it cannot be logically held that [the abutting property owner] actually "created or caused the defect involved."
Wall, 385 So.2d at 909 (citation omitted).
We answer the certified question in this context in the negative and approve the decision of the district court.
It is so ordered.
EHRLICH, C.J., and OVERTON, McDONALD, SHAW, GRIMES and KOGAN, JJ., concur.
NOTES
[1] We have jurisdiction. Art. V, § 3(b)(4), Fla. Const.
[2] For example, the county had root-pruned the trees in 1974 when the road was resurfaced and widened.